

**CLERK, U.S. BANKRUPTCY COURT**
**NORTHERN DISTRICT OF TEXAS**

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed November 17, 2020**

_____
**United States Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| WELLFLEX ENERGY PARTNERS FORT WORTH, LLC, | § § § | Case No.: 20-43267-elm |
| | § | |
| Debtor. | § | |

**ORDER GRANTING MOTION FOR AUTHORITY TO (I) SELL SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES, AND INTERESTS, AND (II) ASSUME AND ASSIGN CERTAIN EXECUTORY CONTRACTS IN CONNECTION WITH THE SALE**

Pending before the Court is the *Motion for Authority to (i) Sell Substantially All of the Debtor's Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests, (ii) Assume and Assign Certain Executory Contracts in Connection with the Sale, and (iii) Provide the Proposed Purchaser with a Topping Fee* (the "**Motion**")[1] filed by Wellflex Energy Partners Fort

---

[1] Capitalized terms not otherwise defined herein have the definition ascribed in the Motion.

Worth, LLC, as debtor and debtor in possession (the "**Debtor**").

Having reviewed the Motion, the *Declaration of Nick Klaus in Support of First-Day Motions*, and all matters brought to the Court's attention at the hearing on the Motion (the "**Sale Hearing**"), and upon the Motion and supporting documentation filed in connection therewith; and the Court having reviewed and considered the Motion and any objections or responses thereto; and upon the record of the Sale Hearing and the full record of this case; and the Court having determined that the relief sought in the Motion is in the best interests of the Debtor, its estate and creditors, and all parties-in-interest and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is **HEREBY FOUND AND DETERMINED THAT**:

A. <u>Jurisdiction and Venue</u>. The Court has jurisdiction over this matter and over the property of the Debtor and its bankruptcy estate pursuant to 28 U.S.C. §§ 157(a) and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A),(M)-(O). Venue of this case and the Motion is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. <u>Statutory Predicates</u>. The statutory predicates for the relief sought herein are 11 U.S.C. § 105, 363, and 365, and Fed. R. Bankr. Proc. 2002, 6004, 6006, and 9014.

C. <u>Notice</u>. Proper, timely, adequate and sufficient notice of the Motion and the relief requested therein, the Sale Hearing, the assumption and assignment of the assumed contracts and leases and related transactions described in the Asset Purchase Agreement (the "**APA**") attached to the Motion between the Debtor and PetroSmith Equipment, L.P. (the "**Purchaser**") (all such transactions being collectively referred to as the "**Sale Transaction**"), has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004 and 6006, and such notice was good, sufficient, and appropriate under the particular

circumstances. No other or further notice of the Motion, the relief requested therein and all matters relating thereto, the Sale Hearing, the Sale Transaction or entry of this Sale Order is or shall be required.

D. <u>Opportunity to Object and Bid</u>. Creditors, parties-in-interest and other entities have been afforded a reasonable opportunity to object to the Sale Transaction. A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities.

E. <u>Prompt Consummation</u>. It is in the best interests of the Debtor and its estate to sell the Acquired Assets (as such term is defined in the APA, the "**Acquired Assets**") in the manner set forth in the Motion and the APA. The Sale Transaction must be approved and consummated promptly as provided herein in order to maximize the value of the Acquired Assets for the Debtor's estate.

F. <u>Sale Process</u>. The sale process implemented by the Debtor, as set forth in the Motion, and supporting documentation filed in connection therewith, was fair, proper, complete, and was reasonably calculated to result in the best value received for the Acquired Assets.

G. <u>Corporate Authority</u>. The Debtor has full corporate power and authority to consummate the Sale Transaction pursuant to the APA, and all other documents contemplated thereby, and no consents or approvals, other than those expressly provided for in the APA, are required for the Debtor to consummate the Sale Transaction.

H. <u>Business Justification</u>. The Debtor has articulated good, sufficient, and sound business reasons for entering into the APA and consummating the Sale Transaction outside a plan

of reorganization. It is a reasonable exercise of the Debtor's business judgment to consummate the Sale Transaction.

  I.  <u>Best Interests</u>. Approval of the APA and the consummation of the Sale Transaction are in the best interests of the Debtor, its estate, its creditors and other parties-in-interest under applicable bankruptcy and nonbankruptcy law.

  J.  <u>Highest or Otherwise Best</u>. The Purchaser's bid for the Acquired Assets, as memorialized in the APA, is the highest or otherwise best offer received for the Acquired Assets. The purchase price to be paid by the Purchaser pursuant to the APA is fair consideration and constitutes reasonably equivalent value for the Acquired Assets, as determined by the marketing process and satisfies the requirements under applicable bankruptcy and nonbankruptcy law.

  K.  <u>Arm's-Length Transaction</u>. The APA was negotiated, proposed and entered into by the Debtor and the Purchaser without collusion, in good faith and from arm's-length bargaining positions. The Purchaser is not an "insider" of the Debtor, as that term is defined in section 101(31) of the Bankruptcy Code. Neither the Debtor nor the Purchaser have engaged in any conduct that would cause or permit the APA avoided or be the basis for an award for monetary damages under Bankruptcy Code section 363(n). Specifically, the Purchaser has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among bidders.

  L.  <u>Good Faith</u>. All of the actions taken by the Purchaser and its officers, directors, employees, counsel and other professionals in connection with the APA, the sale process and this proceeding have been taken in good faith. The Purchaser is a good faith purchaser of the Acquired Assets within the meaning of Bankruptcy Code section 363(m) and is entitled to all of the protections afforded thereby. The Purchaser proceeded in good faith in all respects in connection with the Sale Transaction in that: (i) the Purchaser in no way induced or caused the chapter 11

filing of the Debtor; (ii) the Purchaser recognized that the Debtor was free to deal with any other party interested in acquiring the Acquired Assets; (iii) the Purchaser agreed to subject its bid to higher and better offers; and (iv) all payments to be made to the Purchaser pursuant to the APA in connection with the Sale Transaction have been disclosed.

M. <u>Free and Clear</u>. The Acquired Assets constitute property of the Debtor's estate. The transfer of the Acquired Assets to the Purchaser will be a legal, valid, and effective transfer of the Acquired Assets, and will vest the Purchaser with all right, title, and interest of the Debtor in and to the Acquired Assets free and clear of all liens, claims, interests, obligations, rights and encumbrances, except as otherwise specifically provided in the APA. Except as specifically provided in the APA, the Purchaser shall have no liability for any claims against the Debtor or its estate or any liabilities or obligations of the Debtor or its estate. Accordingly, the Debtor may sell the Acquired Assets free and clear of all liens, encumbrances, pledges, mortgages, deeds of trust, security interests, claims, leases, charges, options, rights of first refusal, easements, servitudes, proxies, voting trusts or agreements, and transfer restrictions under any agreement in each case, whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, and all other adverse claims, including but not limited to, any indebtedness described on Schedule 4.04 of the APA and any litigation claims described on Schedule 4.06 of the APA (collectively, the "**363 Interests**"), except as provided in the APA, because one or more of the standards set forth in sections 363(f)(1)–(5) of the Bankruptcy Code has been satisfied with regard to each such 363 Interest or adverse claim. Premised on the entry of this Order, those non-Debtor parties with 363 Interests or adverse claims in or with respect to

the Acquired Assets who did not object, or who withdrew their objections, to the Sale Transaction or the Motion are deemed to have consented to the sale of the Acquired Assets free and clear of those non-debtor parties' 363 Interests in the Acquired Assets pursuant to section 363(f) of the Bankruptcy Code. Those holders of 363 Interests in any Acquired Assets who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code and are adequately protected by having their 363 Interests, if any, automatically attach to the proceeds derived from the Sale Transaction. The Purchaser would not have entered into the APA, and would not consummate the Sale Transaction, thus adversely affecting the Debtor, its estate, and its creditors, if the sale of the Acquired Assets to the Purchaser were not free and clear of all 363 Interests of any kind or nature whatsoever, or if the Purchaser would, or in the future could, be liable for any of the 363 Interests.

N.     <u>Adequate Assurance</u>.  The assumption and assignment of the all executory contracts to be assumed and assigned to the Purchaser in connection with the Sale Transaction (such agreements to be assumed, the "**Assumed Contracts**") pursuant to the terms of the Motion, APA, and this Sale Order is integral to the Sale Transaction and is in the best interests of the Debtor and its estate, creditors and all other parties-in-interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtor. In addition to agreeing to pay for any cure costs associated with any Assumed Contract, the Purchaser provided adequate assurance of its future performance under the Assumed Contracts within the meaning of sections 365(b)(1)(c) and (f)(2)(B) of the Bankruptcy Code. Any counterparty to any of the Assumed Contracts that has not objected to the assumption and assignment to the Purchaser of the applicable contract or lease, or

that has withdrawn its objection, is deemed to have consented to the assumption and assignment of such Assumed Contracts.

O. <u>Avoidance and Successor Liability</u>. The transfer of the Acquired Assets (including any individual elements of the Sale Transaction) to the Purchaser (i) does not constitute any avoidable transfers under the Bankruptcy Code or under applicable bankruptcy or non-bankruptcy law, and (ii) except as otherwise set forth in the APA, does not, and will not, subject the Purchaser to any liability whatsoever with respect to the operation of the Debtor's business prior to the closing of the Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability. Consummation of the Sale Transaction does not effect a de facto merger of the Debtor and the Purchaser. The Purchaser is not an alter ego or a successor-in-interest the Debtor, nor is the Purchaser otherwise liable for any of the Debtors' debts and obligations, except to the extent otherwise provided for in the APA.

P. <u>Compliance with Non-Bankruptcy Law</u>. In satisfaction of sections 363(d) and 541(f) of the Bankruptcy Code, the transfer of property as contemplated by the Sale Transaction complies with applicable non-bankruptcy law governing such a transfer.

Q. <u>Legal and Factual Bases</u>. The legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein.

R. <u>Entitlement to Proceeds</u>. As acknowledged in the Cash Collateral Order, pursuant to prepetition Security Agreement, dated March 4, 2019, entered into by the Debtor, and properly-filed financing statements, Simmons Bank holds a first priority lien (which Simmons Bank lien is subject to ad valorem tax property liens) on the Acquired Assets being transferred to the Purchaser

through the Sale Transaction, and thus Simmons Bank is entitled to all proceeds from the sale of the Acquired Assets up to the full amount of all outstanding secured indebtedness and obligations owed by the Debtor to Simmons Bank, including any accrued interest, fees and expenses and other adequate protection awarded under the Cash Collateral Orders[2] (the "**FPL Obligations**"), after the payment of all amounts owed to satisfy ad valorem property tax liens against the Acquired Assets, which are senior.

Therefore, it is hereby **ORDERED** that:

1. <u>Motion Granted</u>. The Motion is **GRANTED** to the extent provided herein.

2. <u>Objections</u>. All objections to the Motion and the relief requested therein that have not been withdrawn, waived or settled, and all reservations of rights included in such objections are hereby overruled on the merits and denied.

3. <u>Sale Approval</u>. The Sale Transaction and all of the terms and conditions and transactions contemplated by the APA are hereby authorized and approved pursuant to sections 105(a), 363(b), 363(f) and 365(a) of the Bankruptcy Code. Pursuant to section 363(b) of the Bankruptcy Code, the Debtor is authorized to consummate the Sale Transaction pursuant to and in accordance with the terms and conditions of the APA. The Debtor is authorized to execute and deliver, and empowered to perform under, consummate, and implement the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Sale Transaction, and to effectuate the provisions of this Sale Order and the transactions approved hereby, and to take all further actions as may be required of the Debtor under

---

[2] The Cash Collateral Orders shall mean (a) the Interim Order (i) Authorizing the Debtor to Use Cash Collateral, (ii) Granting Adequate Protection to Prepetition Lenders and (iii) Scheduling a Final Hearing Pursuant to Bankruptcy Rule 4001(b) [Dkt. No. 48]; and (b) the proposed Final Order (i) Authorizing the Debtor to Use Cash Collateral, and (ii) Granting Adequate Protection to Prepetition Lenders and Pursuant to Bankruptcy Rule 4001(b) (appearing at Dkt. No. 74.).

the APA for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.  The failure to specifically include any particular provision of the APA in this Sale Order shall not diminish or impair the efficacy of such provision, it being the intent of this Court that the APA and each and every provision, term and condition thereof be authorized and approved in its entirety.

4. <u>Transfer of the Acquired Assets</u>.  As of the closing date under the APA (the "**Closing**"), the Sale Transaction effects a legal, valid, enforceable and effective sale and transfer of the Acquired Assets to the Purchaser, and shall vest the Purchaser with all right, title, and interest of the Debtor in and to the Acquired Assets.

5. <u>Proceeds of the Sale Transaction</u>.  Within 2 business days after the Closing of the Sale Transaction to the Purchaser, the cash proceeds of the sale of the Acquired Assets shall be paid to (a) Simmons Bank for all amounts of the FPL Obligations and (b) the appropriate governmental taxing authorities for any unpaid ad valorem taxes.  For the avoidance of doubt, the liens of Simmons Bank and the taxing authorities automatically attach to the proceeds of the Sale Transaction, pursuant to section 552(b) of the Bankruptcy Code.

6. <u>Free and Clear</u>.  Except as otherwise provided for in the APA and this Order, the transfer of the Acquired Assets shall vest the Purchaser with all right, title, and interest of the Debtor in the Acquired Assets pursuant to section 363(f) of the Bankruptcy Code, free and clear of any and all 363 Interests and other adverse claims, whether arising by statute or otherwise and whether arising before or after the commencement of this Chapter 11 Case, whether known or unknown, including, but not limited to, 363 Interests of or asserted by any of the creditors, vendors, employees, suppliers, or lessors of the Debtor or any other third party.  Without the necessity of

any further court order or the filing and/or preparation of any document or pleading, any and all such 363 Interests shall automatically attach to (and be deemed perfected as to) the net proceeds of the Sale Transaction, with the same priority, validity, force, and effect as they now have against the Acquired Assets.  With full cooperation by the Debtor, the full sale proceeds from the Sale Transaction shall be deposited by the Purchaser at closing at Simmons Bank.  Except as set forth in the APA, the Sale Transaction will not subject the Purchaser to any liability for any 363 Interests whatsoever, including, without limitation, statutory claims, that any of the foregoing parties or any other third party may have against the Debtor with respect to the operation of the Debtor's business prior to the closing of the Sale Transaction or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity including, without limitation, any laws affecting antitrust, successor, transferee or vicarious liability.  All persons and entities asserting or holding any 363 Interests in or with respect to the Acquired Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), howsoever arising, shall be forever barred, estopped, and permanently enjoined from asserting, prosecuting or otherwise pursuing such 363 Interests against the Purchaser or the Acquired Assets.  Subject to the 363 Interests attaching to the proceeds of the Sale Transaction, this Sale Order shall be effective as a determination that, as of the Closing, all 363 Interests of any kind or nature whatsoever existing against the Acquired Assets prior to the Closing have been unconditionally released, discharged and terminated as to the Acquired Assets, and that the conveyances described herein have been effected.  Following the Closing, no holder of a 363 Interest in the Acquired Assets shall interfere with the Purchaser's title to or use and enjoyment of the Assets based on or related to such 363 Interest.  Each and every federal, state, and local

governmental agency, recording office or department and all other parties, persons or entities is hereby directed to accept for recordation this Sale Order, and any and all documents or instruments necessary or appropriate to effectuate the transactions contemplated by this Sale Order and the APA, as conclusive evidence of the free and clear and unencumbered transfer of title to the Acquired Assets conveyed to the Purchaser. This Sale Order shall be binding upon and govern the conduct of all such federal, state, and local government agencies or departments, including any filing agents, filing officers, title agents, recording agencies or offices, secretaries of state, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title in or to the Acquired Assets. This Sale Order is deemed to be in recordable form sufficient to be placed in the filing or recording system maintained by any recording officer of any federal, state, and local governmental agency or department.

7. <u>Surrender of the Acquired Assets</u>. All entities who are presently, or who as of the Closing may be, in possession of some or all of the Acquired Assets hereby are directed to surrender possession of the Acquired Assets to the Purchaser as of the Closing; provided, however, that no portion of Simmons Bank's cash collateral shall be released until the full sale proceeds from the Sale Transaction are deposited at Simmons Bank. On the Closing and subject to the 363 Interests attaching to the proceeds of the Sale Transaction as provided for in this Sale Order, each of the Debtor's creditors is authorized to execute such documents and take all other actions as may be reasonably necessary to release its 363 Interests in the Acquired Assets, if any, as such 363 Interests may have been recorded or may otherwise exist.

8. <u>No Successor Liability</u>. Purchaser is not a "successor" to the Debtor or its estate by reason of any theory of law or equity, and the Purchaser shall not assume, nor be deemed to

assume, or in any way be responsible for any liability or obligation of any of the Debtor and/or its estate, other than liabilities expressly assumed by the terms of the APA (if any), with respect to the Acquired Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability except for the assumption of the Assumed Contracts (as defined in the APA) solely to the extent expressly provided in the APA. Except to the extent the Purchaser assumes the Assumed Contracts and liabilities pursuant to the APA, neither the purchase of the Acquired Assets by the Purchaser or any of its affiliates nor the fact that the Purchaser or any of its affiliates are using any of the Acquired Assets previously operated by the Debtor will cause the Purchaser or any of its affiliates to be deemed a successor in any respect to the Debtor's business or incur any liability derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, the Employee Retirement Income Security Act of 1974 (ERISA), tax, labor, employment, environmental, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine.

9. <u>Bulk Sale Laws Inapplicable</u>. No bulk sale law or any similar law of any state or other jurisdiction shall apply in any way to the Sale Transaction and the transactions contemplated by the APA.

10. <u>Good Faith</u>. The Sale Transaction has been undertaken by the Debtor and the Purchaser at arm's-length, without collusion. The Purchaser will acquire the Acquired Assets pursuant to the Transaction Documents in good faith under section 363(m) of the Bankruptcy Code and the Purchaser shall be entitled to all of the protections in accordance therewith. The consideration provided by the Purchaser for the Acquired Assets under the APA is fair and

reasonable, and neither the Sale Transaction nor any element of the Sale Transaction, may be avoided or be the basis for an award of monetary damages under section 363(n) of the Bankruptcy Code. The sale of the Acquired Assets and the consideration provided by the Purchaser shall be deemed for all purposes to constitute a transfer for reasonably equivalent value and fair consideration under the Bankruptcy Code and any other applicable law.

11. <u>Required Permits</u>. To the extent authorized under applicable non-bankruptcy law, the Debtor is hereby authorized to assign all state and federal licenses and permits used in connection with the Acquired Assets (if any) to the Purchaser in accordance with the terms of the APA.

12. <u>Assumption and Assignment of Assumed Contracts</u>. Pursuant to section 365(b), (c) and (f) of the Bankruptcy Code, the Debtor is authorized to assume and assign the Assumed Contracts designated for assignment to the Purchaser pursuant to the APA. Subject to payment of all cure costs (if any), as required by Section 7.01 of the APA, in accordance with sections 365(b)(2) and (f) of the Bankruptcy Code, upon transfer of the Assumed Contracts to the Purchaser, (i) the Purchaser shall have all of the rights of the Debtor thereunder and each provision of such Assumed Contracts shall remain in full force and effect for the benefit of the Purchaser notwithstanding any provision in any such contract, or in applicable law, that prohibits, restricts or provides that such Assumed Contracts may be terminated, or the rights of any party modified in any respect, including pursuant to any "change of control" clause, by any other party thereto as a result of the Sale Transaction.

13. <u>Purchaser Authorized to File Terminations of 363 Interests</u>. Except as expressly provided in the APA, following the Sale Transaction closing, the Purchaser is hereby authorized (but not directed) to execute and file any termination statements, instruments of satisfaction,

releases, and other documents with respect to any 363 Interests (other than for 363 Interests expressly assumed pursuant to the APA) against the Acquired Assets prior to the Sale Transaction closing, which the Purchaser deems necessary or desirable in order to evidence the release of such 363 Interests; provided, however, that no action taken by the Purchaser or Debtor pursuant to this paragraph shall cause the release of any security interest or lien recognized or granted by paragraphs 5 and 6 of this Order.

14. <u>Modifications</u>. The APA and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in writing signed by both parties, and in accordance with the terms thereof, without further order of this Court.

15. <u>Binding Order</u>. This Sale Order and the APA shall be binding upon and govern the acts of all persons and entities, including, without limitation, the Debtor and the Purchaser, their respective successors and permitted assigns, including, without limitation, any trustee appointed in a Chapter 7 case if this case is converted from Chapter 11, and all creditors of any of the Debtor (whether known or unknown).

16. <u>Non-Severability</u>. The provisions of this Sale Order are non-severable and mutually dependent.

17. <u>Order Immediately Effective</u>. Notwithstanding Bankruptcy Rules 6004(h), 6006(d) and 7062, this Sale Order shall be effective and enforceable immediately upon its entry, and the sale approved by this Sale Order may close immediately upon entry of this Sale Order, notwithstanding any otherwise applicable waiting periods.

18. <u>Retention of Jurisdiction</u>. This Court shall retain jurisdiction on all matters pertaining to the relief granted herein, including to interpret, implement, and enforce the terms and

provisions of this Sale Order and the APA, adjudicate any dispute relating to the Sale Transaction or the proceeds thereof, and the assumption, assignment and cure of any of the Assumed Contracts.

19. Nothing in this Sale Order shall amend, alter or diminish, in any way, the rights of Simmons Bank, or any obligations of the Debtor, under the Cash Collateral Orders.

20. Nothing in this Sale Order shall constitute a waiver of any of the Debtor's rights under section 506(c) of the Bankruptcy Code.

###END OF ORDER###

Respectfully submitted by:

*/s/ Stephen A. McCartin*
Stephen A. McCartin (TX 13374700)
Mark C. Moore (TX 24074751)
Emily Shanks (TX 24110350)
**FOLEY & LARDNER LLP**
2021 McKinney Avenue, Suite 1600
Dallas, TX 75201
Telephone: (214) 999-3000
Facsimile: (214) 999-4667
smccartin@foley.com
mmoore@foley.com
eshanks@foley.com

**PROPOSED COUNSEL TO DEBTOR**
**WELLFLEX ENERGY PARTNERS FORT WORTH, LLC**